{¶ 55} I respectfully dissent from the majority's opinion. For the reasons that follow, I would reverse and remand this matter to the trial court to enforce the terms of the clear agreement of the parties.
 {¶ 56} It is simply unacceptable to enter into a clear, complete, unambiguous settlement agreement and then to escape its consequences by deciding you have changed your mind. In the instant case, the assurances set forth in the transcript reveal a more guaranteed understanding of events than even a signed agreement. The record reveals that a thorough discussion ensued between the parties, which included, but was not limited to, the decision of the parties, the consequences of entering into the *Page 17 
agreement, the timing of events to occur, and an explanation of the waiver of rights. In fact, there was even a time when appellant expressed some confusion, and appellee's counsel went to great lengths to assure both her understanding of the agreement and its binding nature.
 {¶ 57} In its judgment entry dated June 13, 2007, the trial court placed emphasis on the fact that the agreement was not made in court, and that "not one document was filed with the Court acknowledging an agreement between the parties, or to this case proceeding as an uncontested divorce, rather than as a full-day trial scheduled for June 14, 2007." However, this is inconsistent with the transcript containing the sworn statements of the parties from the March 17, 2007 meeting.
 {¶ 58} The transcript, meeting, and sworn statements clearly reveal that the parties considered and consented to all outstanding issues. The parties acknowledged they agreed to abide by the agreement and make it part of a court order. Contrary to what is indicated by the trial court, appellant clearly agreed to allow appellee to proceed with an uncontested divorce; withdraw her counterclaim; and waive any right she had to appear at the hearing.
 {¶ 59} In addition, there has been some question raised by the majority regarding the payment of $10,000 agreed to by appellee. The following exchange occurred at the deposition:
 {¶ 60} "[Attorney for appellant]: While you're looking, can I ask you, if payment is not made in 30 days, this agreement is null and void?
 {¶ 61} "[Attorney for appellee]: Hold on. Let me get back — *Page 18 
 {¶ 62} "[Attorney for appellant]: Okay.
 {¶ 63} "[Attorney for appellee]: — to you on that."
 {¶ 64} While it is clear the parties did not come to an understanding at this point as to what would happen if the $10,000 was not paid, they did reach a decision later in the meeting, as evidenced by the following exchange in response to a question as to whether they had forgotten anything:
 {¶ 65} "[Attorney for appellant]: Well, we talked. I think we should hold the uncontested divorce until the payment is made.
 {¶ 66} "[Attorney for appellee]: Yeah, I have no problem with that.
 {¶ 67} "[Attorney for appellant]: Okay.
 {¶ 68} "[Attorney for appellee]: So, well, if we can get this done on Wednesday, do you want to get it done on Wednesday?
 {¶ 69} "[Attorney for appellant]: Well, I think, to protect all involved, yourself included, we should have that financial transfer before the actual hearing; otherwise, we could open the door for numerous headaches —
 {¶ 70} "[Attorney for appellee]: Why don't I do this?
 {¶ 71} "[Attorney for appellant]: — and all kinds of things.
 {¶ 72} "[Attorney for appellee]: Why don't I do this, that once I have the $10,000, I will hold it in escrow. And, that way, we can have the transaction occur on the same time that we have the divorce occur.
 {¶ 73} "[Attorney for appellant]: That will work.
 {¶ 74} "[Attorney for appellee]: Fair enough? *Page 19 
 {¶ 75} "[Attorney for appellant]: Fair enough.
 {¶ 76} "BY [Attorney for appellee]:
 {¶ 77} "[Attorney for appellee]: Okay. Bob, do you agree that, once you get me the $10,000 for your wife, we will ask the Court to schedule this for an uncontested hearing as soon as possible?
 {¶ 78} "[Appellee]: Yes.
 {¶ 79} "[Attorney for appellee]: And that, on the day that the uncontested divorce goes through, I will then transmit to Attorney Stein the $10,000?
 {¶ 80} "[Appellee]: Yes."
 {¶ 81} Therefore, as demonstrated by the extensive colloquy between the parties and their attorneys, the issue regarding payment of the $10,000 had been finalized.
 {¶ 82} On appeal, appellee's attorney is not claiming the agreement was incomplete; he is not claiming the agreement was obtained as a result of fraud, duress, or undue influence; he is not claiming his client was under any legal disability when entering into the agreement. In fact, the only claim appellee's counsel argues is that his client changed his mind shortly after the meeting and sworn statement concerning the agreement. This was acknowledged by appellee's counsel at oral argument.
 {¶ 83} A similar scenario occurred in Shetler v. Shetler, 9th Dist. No. 00CA0070, 2001 Ohio App. LEXIS 2289, where the Ninth Appellate District considered the binding nature of a verbal agreement that occurred at a deposition. The Shetler Court held:
 {¶ 84} "Settlement agreements are favored in the law. * * * A separation agreement is a contract between two parties and therefore is enforceable only if the *Page 20 
parties intend to contract on its essential terms. * * * Separation agreement may be either written or oral, and may be entered into prior to or at the time of a divorce hearing. * * * Where the agreement is made out of the presence of the court, the court may properly sign a journal entry reflecting the settlement agreement in the absence of any factual dispute concerning the agreement. * * *
 {¶ 85} "An oral settlement agreement `can be enforced by the court in those circumstances where the terms of the agreement can be established by clear and convincing evidence.' * * * Clear and convincing evidence is that `which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' * * *
 {¶ 86} "It is uncontested that at the October 11, 1999 deposition, James agreed under oath to the terms of the settlement agreement. A transcript of the deposition was filed with the trial court. We find that James entered into a binding settlement agreement on October 11, 1999, the terms of which are established by the clear and convincing evidence of the transcript of the deposition. All matters relating to the complaint for divorce were settled in this agreement.
 {¶ 87} "Having entered into an agreement, the trial court did not err by enforcing the terms of the October 11, 1999 settlement agreement. `When the parties agree to a settlement offer, (the) agreement cannot be repudiated by either party, and the court has the authority to sign a journal entry reflecting the agreement and to enforce the settlement.' * * * While in hindsight James may no longer agree with the terms of the October 11, 1999 settlement, he cannot legally repudiate the settlement agreement. * * * *Page 21 
James's first assignment of error is overruled." (Internal citations and footnote omitted.) Id. at *2-5.
 {¶ 88} Attorneys and clients should not be permitted to enter into what is clearly a settlement agreement and then decide to change their minds. In order to substantiate his claim that the agreement was nonbinding, appellee argues that: (1) his attorney called and left a message later that same day (a Saturday) with appellant's counsel advising him that his client had changed his mind, and (2) appellant did not demonstrate that she had done anything in the interim "in reliance" on the agreement. However, these types of arguments propounded by appellee clearly miss the point. The potential for abuse of process is extraordinary if parties can enter into the type of agreement displayed in this case and then repudiate their acquiescence when little time has passed or when no one can prove the opposing party has done something to their detriment in reliance on the agreement.
 {¶ 89} It is unfortunate that counsel for appellant waited over two months before the deposition was given to the court for consideration; the better practice would have been to allow the trial court additional time to review the transcript and motion. However, this lapse in time should not negate the fact that the parties entered into a binding settlement agreement. Therefore, based on the foregoing, I would reverse and remand this matter to the trial court to enforce the terms of the clear agreement of the parties. *Page 1